**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HUMAN APPEAL, HUMAN APPEAL INC., and MOHAMED ASHMAWEY<br><br>*Plaintiffs*,<br><br>v.<br><br>MIDDLE EAST FORUM and SAM WESTROP,<br><br>*Defendants*. | Civ. No.<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, in support of their Complaint, state as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs bring this lawsuit to seek redress for the harm to their reputations inflicted by defamatory statements published by Defendants on the website of Middle East Forum ("MEF") and elsewhere.

2.      Plaintiffs have long enjoyed well deserved peerless reputations stemming from their not-for-profit work ameliorating hunger and homelessness in poverty-stricken regions around the world.  The Plaintiff entities are registered charities in the United States and the United Kingdom, and each follows strict international standards of diligence to vet all potential partners in their work.  Reflecting this reality, the Plaintiffs operate around the world with the permission of governments that have carefully vetted and confirmed Plaintiffs' bona fides, including but not limited to the current government of Israel. The publication of the offending statements that are the subject of this lawsuit threatens to inflict serious harm to Plaintiffs' reputations.

3.      Contrary to the false impression caused by the offending statements, Plaintiffs are not Islamists.  While Plaintiff Ashmawey is a member of the Muslim faith and the Plaintiff

entities are *inspired* by Islamic values of charity and compassion in their work, the portrayal of Plaintiffs as *Islamist* is false.  That is, the Plaintiff entities do *not* engage in religious or political advocacy of any kind, in the United States or elsewhere.  Plaintiffs do not and have *never* advocated for Islamism – a political philosophy that advocates for the operation of governmental functions according to Islamic law.   And while it should not even be necessary to say so, contrary to the knowingly false statements made by Defendants, Plaintiffs do not in any place or in any way support, advocate or tolerate terrorism or other violence.

4.    Defendants, while purporting to conduct research and analysis for the claims they make in subsequently published articles and reports, are not neutral or unbiased reporters.  Instead, Defendants have long been the purveyors of biased and preconceived story lines in connection with what they portray as a global conflict between Islam and the West. Defendants are sophisticated actors in the disinformation wars they launch, selectively and misleadingly marshaling a collection of purported facts and outright fictions in the service of pre-determined story lines, in which the Muslim affiliated persons and organizations that are the subject of Defendants' "reporting" are routinely assumed to be guilty of terrorism or other hostility to the West.  The defamatory statements that are the subject of this lawsuit are the consequence of Defendants' decision to make Plaintiffs the latest target of Defendants' disinformation campaigns.

5.    Thus, in 2025, Defendants published that following articles, all of which contain statements defaming Plaintiffs:

4899-7847-7176.v6

a.  February 1, 2025 article entitled "*Terror Finance at the State Department and USAID*" (the "February Article").[1]

b.  June 10, 2025 article entitled "*Texas State Government Gives $13 Million to Islamist Mosques and Community Groups*" (the "June Article").[2]

c.  August 26, 2025 article entitled "*Terror-Aligned Charity Human Appeal Should Be Prosecuted, Not Publicly Funded -- U.K.-Headquartered Charity Finances Hamas Terror Proxies*" (the "August Article").[3]

6.      Additionally, as part of their campaign against Plaintiffs, on October 3, 2025, Defendant MEF published an article entitled "*U.K. Lawmaker Calls out Islamist Links in Pan-European Youth Forum*" authored by Jules Gomes (the "October Article", and together with the February, June, and August Articles, the "Articles").[4]

7.      The themes of these articles are the knowingly false notions that Plaintiffs advocate Islamism, finance and support Islamic extremism, terrorism, and specific terrorist organizations such as Hamas.

---

[1] A copy of the February Article is available at https://www.meforum.org/fwi/fwi-research/terror-finance-at-the-state-department-and-usaid and attached as Exhibit A.

[2] A copy of the June Article is available at https://www.meforum.org/fwi/fwi-research/texas-state-government-gives-13-million-to-islamist-mosques-and-community-groups and attached as Exhibit B.

[3] A copy of the August Article is available at https://www.meforum.org/human-appeal and attached as Exhibit C.

[4] A copy of the October Article is available at https://www.meforum.org/fwi/fwi-news/u-k-lawmaker-calls-out-islamist-links-in-pan-european-youth-forum and attached as Exhibit D.

8.     Links to the Articles were also published by Defendants on their respective social media accounts.  When posting the Articles to their social media accounts, Defendants made additional defamatory statements explicitly accusing Plaintiffs of supporting terrorists.

9.     The specious and defamatory allegations are highly damaging to Plaintiffs.  As non-profit organizations based in the United Kingdom and the United States, the Plaintiff entities are dependent on maintaining regulatory approval from those countries, and on being able to raise public and private funds in the United Kingdom, the United States, and around the world. Plaintiffs also frequently partner with other charitable organizations and governmental entities and must pass stringent globally recognized due diligence checks to do so.  By falsely claiming that Plaintiffs support terrorism and Islamism, Defendants have endangered Plaintiffs' ability to gain regulatory approvals, raise funds, and pass background checks to conduct their charitable work.  Thus, by falsely claiming that the Plaintiff entities are Islamist organizations which support terrorism, Defendants have jeopardized Plaintiffs' operations and very existences.

## THE PARTIES

10.     Plaintiff Human Appeal, which is based in the United Kingdom ("HAUK"), is a humanitarian aid charity that was established in 1991 and is regulated by the Charity Commission of England & Wales (Charity No: 1154288).

11.     Plaintiff Human Appeal, Inc., which is based in the United States ("HAUSA") is a 501(c)(3) nonprofit organization that is registered and has its principal place of business in California. HAUK and HAUSA are affiliated non-partisan non-profit organizations devoted to their shared humanitarian mission of ameliorating the lives of people living in poverty around the world.

4

12. Plaintiff Mohamed Ashmawey is a United States citizen residing in California. Dr. Ashmawey currently serves as the CEO of both HAUK and HAUSA.

13. Defendant Middle East Forum is a Pennsylvania nonprofit corporation and publisher with its principal place of business in Philadelphia, Pennsylvania. MEF describes its mission as to "defeat radical Islam." It owns and operates multiple websites, mailing lists, and social-media platforms through which it disseminates content worldwide.

14. Defendant Sam Westrop is MEF's employee, columnist, and the author of the February Article, the June Article, the August Article and the related social media posts on X and Facebook. At all relevant times, Westrop acted within the scope of his agency and employment with MEF. Upon information and belief, Westrop is a citizen of the United Kingdom who currently resides in Massachusetts.

## JURISDICTION AND VENUE

15. This Court has subject matter over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

16. This Court has personal jurisdiction over MEF because it is a Pennsylvania nonprofit corporation with its principal place of business in Philadelphia, Pennsylvania.

17. This Court has personal jurisdiction over Westrop because this action arises from actions Westrop took during the course of his employment by MEF, an entity located in this District, and, on information and belief, Westrop communicated with individuals located in this District during the course of preparing, writing, and publishing the defamatory statements which give rise to this Action.

5

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant MEF is a resident of this District, Defendants are subject to personal jurisdiction in this District, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### Plaintiffs Enjoy Positive Reputations in the Humanitarian World

19.     HAUK, founded in Manchester, England 34 years ago, has since inception been devoted to its charitable mission of supplying food and shelter to individuals in poverty-stricken areas of the world. Its motto is "Here For Every Human" and it is a faith inspired, but not faith specific, humanitarian charity.

20.     HAUK is regulated by the Charity Commission of England and Wales, is in good standing, and is subject to strict audit and disclosure requirements.

21.     HAUSA was founded in 2022 to serve as HAUK's affiliate in the United States.

22.     HAUK and HAUSA partner on specific aid relief efforts with various other non-governmental organizations ("NGOs") from time to time, as well as governmental and quasi-governmental entities.  In selecting such partners, HAUK and HAUSA conduct due diligence and only partner with other entities after due diligence has confirmed that they, like HAUSA and HAUK, are non-political, non-partisan, do not support terrorism and are solely committed to their humanitarian mission.

23.     In 2019, Dr. Ashmawey joined HAUK as CEO and is currently the CEO of HAUK and HAUSA.  Prior to joining HAUK, Dr. Ashmawey worked at other non-profit organizations to remediate the effects of poverty.

24.     In 2022, Dr. Ashmawey received the Humanitarian Hero of the Year Award from AidEx.  AidEx is a global event which brings together over 3,000 representatives of the humanitarian aid and development community from over 94 countries.  Participants from UN Agencies, the EU, Red Cross and Red Crescent Societies, NGOs, governments, and the private sector attend the global event.

25.     HAUK and HAUSA work together to fight against poverty and natural disasters. Plaintiffs work alongside reputable international partners including the United Nations, Red Cross, AmeriCares, and Globus Relief USA. They have a demonstrated history of credibility and standing within the global humanitarian community.

26.     In 2024, Plaintiffs provided aid to more than 6 million people around the globe, through programs that promoted nutrition, food security, livelihood, and sanitation.

27.     Plaintiffs undertake and support projects around the globe, including but not limited to Muslim countries or populations.  HAUK has undertaken and supported projects to help civilians living in Gaza, which work has increased in importance and scope following the October 2023 terrorist attacks and subsequent war in Gaza and the related humanitarian crisis that unfolded there.

28.     In 2024, Plaintiffs delivered more than 3 million aid items to people dealing with emergencies by providing food, shelter, water, health care, clothes, hygiene improvements and necessary household items.

29.     Many of Plaintiffs' projects are undertaken with other charitable organizations. Prior to partnering with such other organizations, Plaintiffs conduct due diligence to determine that the other organizations are not engaging in illegal behavior of any kind, including, of course, any kind of support for terrorism, which Plaintiffs recognize to be unlawful and abhorrent.

4899-7847-7176.v6

30.     Thus, HAUK and HAUSA undertake their charitable work in conformity with Red Cross and other recognized standards of accountability.  They operate under strict policies, procedures, and values that have contributed to achieving membership of the Core Humanitarian Standard (CHS) Alliance and being accepted to join its certification process—a globally recognized qualification that validates the organization's commitment to quality and accountability, including neutrality in its operations. This membership underscores the organizations' professional standards and ethical approach to humanitarian work.

**Plaintiffs are Not Affiliated with Human Appeal International Based in the United Arab Emirates Nor are Plaintiffs Members of the 'Union of the Good'**

31.     As described below, as a part of their narrative of falsely attacking Plaintiffs as Islamist financiers of terrorism, Defendants selectively assemble a collection of allegations in the service of that pre-determined narrative. One of the pillars of that misleading narrative involves Defendants' false insistence that Plaintiffs are presently closely affiliated with Human Appeal International based in the United Arab Emirates ("HAI-UAE"), an organization with which Plaintiffs have had no ties or other relationship since HAUK cut ties with HAI-UAE nine years ago, in 2016.

32.     Originally, HAUK was known as "Human Appeal International."  Approximately ten years ago (in 2016), HAUK changed its name to drop the word "International."  Up until 2016, HAUK had an informal affiliation with HAI-UAE and they had worked jointly on some humanitarian projects.  However, HAUK was never officially affiliated with HAI-UAE and HAI-UAE was never a branch, or regional office, of HAUK.

33.     In or around 2016, HAUK dropped the word "International" from its name and severed all ties with HAI-UAE.  HAUK severed ties with HAI-UAE because that UAE entity's governance did not satisfy stringent regulatory requirements imposed by the Charity

Commission of England and Wales. HAUK thus changed its name (and modified its logo) to emphasize that it had become wholly separate from HAI-UAE. HAUK is not and has never been aware of any facts supporting the notion that HAI-UAE was or is involved in funding terrorism or any other improper conduct.

34.     Contrary to the accusations made by Defendants in their publications, HAUK has never been a member or participant in a group of Hamas-linked charities dubbed the "Union of the Good." To be sure, in 2008, Israel's Minister of Defense alleged that HAUK was a member of that group, but that allegation triggered a thorough investigation by the Charity Commission of England and Wales. At the conclusion of that investigation, the Charity Commission of England and Wales concluded that HAUK was *not* a member of the Hamas-linked Union of Good. Reflecting this conclusion, the government of Israel has continued to allow HAUK to conduct relief operations in Gaza. As Defendants are aware, the government of Israel does not permit organizations affiliated with Hamas in any respect to conduct relief operations in Gaza, and thus the Israeli government's continuing decision to allow HAUK to operate in Gaza reflects its determination that HAUK is not a member of the Union of the Good and does not in any way provide support for Hamas or terrorism in Gaza or elsewhere.

35.     The conclusion that HAUK is not a member of the Union of the Good or otherwise a supporter of terrorism is reflected by a 2012 British Court judgment. In that year, a British publication made a similar allegation, but as a consequence of the legal proceedings, that publication, the Jewish Chronicle, published an apology in which it acknowledged that its statements about HAUK being a terrorist organization that funded terrorist activities were untrue and baseless.

4899-7847-7176.v6

36.     In 2018, the Charity Commission of England and Wales conducted a comprehensive audit of HAUK, involving multiple auditors and extensive disclosure of records and information by HAUK.  Following this inquiry, HAUK remains a charity in good standing under the laws of England and Wales.

**Defendants Target Muslim Organizations and Engage in Misinformation Campaigns**

37.     On information and belief, MEF was founded in 1994 by Daniel Pipes.  MEF's stated purpose is to "promote[] American interests in the Middle East and protect[] the West from Middle Eastern threats."  In actuality, through its website and other publications, MEF publishes biased reporting that is Islamophobic and designed to undermine the credibility of Muslim individuals and organizations.

38.     One section of MEF's website is devoted to its "Islamist Watch" which it claims is devoted to "combating the ideas and institutions of lawful Islamism in the United States and through the West."  It claims that it is seeking to "expose the Islamist organizations that currently dominate the debate, while identifying and promoting the work of moderate Muslims."

39.     In reality, on information and belief, MEF's "Islamist Watch" seeks simply to link law-abiding Muslim organizations with terrorist groups, often on thin or non-existent grounds, without promoting the work of any organizations in which persons of the Muslim faith play significant roles.

40.     Articles on MEF's website, including the Islamist Watch section, contain click-bait headlines which are meant to grab a reader's attention and stoke fear and alarm among its readers.  Thus, articles are published with headlines such as "*Plano, Texas, Hands $1.2 Million to Radical Terror-Aligned Charities, Including Controversial EPIC City*," "*Terror-Aligned*

10

*Charity Human Appeal Should Be Prosecuted, Not Publicly Funded*," and "*Terror Supporters and Child Abuse Enthusiasts to Benefit from Expanded Federal Program*."

41.     MEF has been criticized by recognized independent third parties for targeting Muslim charity organizations and engaging in disinformation campaigns.

42.     According to a comprehensive report from George Mason University titled "*Mapping Anti-Muslim Discrimination and Information Manipulation and its Impact on Humanitarian Aid and Development*,"[5] authored by Gerald T. FitzGerald (the "George Mason Report"), MEF operates as part of a network of politically motivated organizations that systematically target Muslim-led humanitarian organizations through coordinated misinformation campaigns.  This objective and well-respected university report explains how MEF and its founder Daniel Pipes work to "cast doubt on the reputation of Muslim-led charities by attempting to link them with extremism and even terrorism"—precisely as MEF has done in the subject Articles.

43.     The George Mason Report concluded that MEF, along with another organization, created "most of the manipulated information used to target Muslim-led humanitarian relief and development aid."

44.     MEF thus has a history of targeting humanitarian actors like Plaintiffs.  As found in the George Mason Report, MEF funds another organization which "has a history of engaging in information manipulation campaigns to delegitimize and undermine the activities of humanitarian and human rights organizations."

---

[5] FitzGerald, Gerald, "Mapping Anti-Muslim Discrimination and Information Manipulation, and Its Impact on Humanitarian Aid and Development." Fairfax, VA: The Schar School of Policy & Government, George Mason University, January 2024. infomanipulation.schar.gmu.edu.

45.     As part of these coordinated campaigns, MEF works with like-minded organizations to "optimize each other's search engine results and reinforce a filter bubble.  These collaborations include the cross-posting of articles between MEF and [Investigative Project on Terrorism] sites, creating the conditions for circular reporting and reliance on false authority by embedding external links to one another's false and/or misleading information, the persistent repetition of dubious or false accusations, and the targeted placement of their content across sympathetic or susceptible media spaces."

46.     The George Mason Report found that for its attack against one organization, MEF continually repeated the same false allegations, thereby creating "a cycle of manipulated information, creating the conditions for circular reporting and false corroboration by making it appear as if there was a consensus or substantive evidence for MEF's claims."

47.     As pointed out in the George Mason Report, "Westrop has a documented history of making false and defamatory allegations against prominent British Muslims" and has been held responsible by a U.K. court for libel for falsely linking a person to Islamist terrorism.

**Defendants Engage in a Multi-Year Campaign Against Plaintiffs**

48.     Consistent with its *modus operandi* as described in the George Mason Report, Defendants have perpetrated a multi-year smear campaign against Plaintiffs through which they have consistently and repeatedly falsely portrayed Plaintiffs as aligned with terrorist organizations.

49.     As part of this campaign, Defendants have published multiple articles regarding Plaintiffs which are then relied on by future articles published by Defendants.

50.     For example, in a September 13, 2013 article entitled "*Kuwait Funding Muslim Brotherhood Growth in West Mosques*," MEF falsely accused Human Appeal International of

being "Hamas-linked." To support this false claim, the words "Hamas-linked" was a hyperlink to an article previously published on June 17, 2013.[6] But while that June 17, 2013 article had been published by MEF, instead of linking to MEF's own website, the hyperlink contained in the September 13, 2013 article was to a publication of the article on the "Gatestone Institute" website.[7] Thus, MEF made it appear that it was citing to another source when in actuality it was just repeating allegations it had already published.

51.     Similarly, other articles published by Defendants repeatedly make the same defamatory allegations regarding Plaintiffs – accusing Plaintiffs repeatedly of being "Hamas-affiliated" and a "fundraiser for Hamas."[8]

52.     Defendants' campaign against Plaintiffs has included falsely alleging that Dr. Ashmawey supports Hamas and other terrorist groups.  By alleging that Plaintiffs hired a CEO who supports Hamas and terrorism, Defendants are furthering their narrative that Plaintiffs also support terrorism.  In support of this, Defendants published an article on November 14, 2023 that falsely claims "Ashmawey, who was once president of the Muslim Arab Youth Association,

---

[6] Article available at: https://www.meforum.org/islamist-watch/kuwait-funding-muslim-brotherhood-growth-in

[7] *Compare* https://www.gatestoneinstitute.org/3765/prominent-british-charity-linked-to-hamas (cite linked in Sept. 13, 2013 article) *with* https://www.meforum.org/islamist-watch/prominent-british-charity-linked-to-hamas

[8] *Compare* Oct. 3, 2015 article entitled Terror-link charity was due to host joint official reception with Tory party (available at https://www.meforum.org/islamist-watch/terror-link-charity-was-due-to-host-joint); *with* Mar. 16, 2018 article entitled Excusing Islamist Warfare as Welfare (available at https://www.meforum.org/islamist-watch/excusing-islamist-warfare-as-welfare); *and* Mar. 21, 2018 article entitled Extremist Cleric Yasir Qadhi Headlines ICNA Dinner (available at https://www.meforum.org/islamist-watch/extremist-cleric-yasir-qadhi-headlines-icna-dinner); *and* Apr. 15, 2021 article entitled Islamic Relief Faces Ongoing Crisis, Despite British Whitewash (available at https://www.meforum.org/islamist-watch/islamic-relief-faces-ongoing-crisis-despite).

which, under Ashmawey's watch, ran events as which senior Hamas leader Sheikh Muhammad Siyam told the crowd to 'exterminate' all Israelis.  Ashmawey has since held top leadership positions at <u>Islamic Relief</u> in the UK, as well as the Islamist charity Human Appeal."[9]  While the words "Islamic Relief" contained a hyperlink and thus appeared to a reader to contain support for the statements in the article, in actuality, the hyperlink contained there was simply a link to the *same* article published on a different website, Islamism.news.[10]  Thus, any reader who did not click on the hyperlink would assume that Defendants were providing support for their defamatory allegations when in fact they were simply linking to the same (unsupported) article.

### The Defamatory Articles

53.    In 2025, Defendants renewed their making of repeated false allegations regarding Plaintiffs.

54.    On information and belief, Defendants set the stage for a full-scale assault on Plaintiffs by publishing two shorter articles (the February Article and the June Article).  Then, after these articles were published, Defendants published the August Article which was devoted to falsely accusing Plaintiffs of supporting and financing Islamic extremism, terrorism, and Hamas, and even suggesting that HAUK had committed criminal conduct – by urging that HAUK be criminally prosecuted.

**The February Article**

55.    On February 1, 2025, MEF published an article authored by Sam Westrop entitled "*Terror Finance at the State Department and USAID*."

---

[9] https://www.meforum.org/the-us-charitable-network-that-subsidizes-hamas

[10] *See* https://islamism.news/research/investigations/revealed-the-funding-behind-the-u-s-charitable-network-that-subsidizes-hamas/#islamic-relief

56.     The February Article contained the following allegation:

Previous board members of [Mercy-USA] have also included Mohamed
Ashmawey, who was once president of the Muslim Arab Youth Association,
which, under Ashmawey's watch, ran events at which senior Hamas leader
Sheikh Muhammad Siyam told the crowd to 'exterminate' all Israelis.  Ashmawey
has since held top leadership positions at <u>Islamic Relief</u> in the UK, as well as the
Islamist charity Human Appeal.

57.     The statement in this passage that Human Appeal is an "Islamist" organization is

false and is known by Defendants to be false.  The statement in this passage that Dr. Ashmawey

"ran" multiple events where a Hamas leader "told the crowd to 'exterminate' all Israelis"

implies, and was intended by Defendants to imply, that Dr. Ashmawey favors and/or supports a

genocide against Israelis – suggestions that Defendants also know to be false.

58.     The Defendants attempted to provide readers with the false impression that these

defamatory statements and implications had evidentiary support, but when one looks carefully at

the February Article, the illusion Defendants sought to create becomes evident.  That is, the

words "Islamic Relief" contained a hyperlink to an article on the website "Focus on Western

Islamism" (Islamism.news) dated November 14, 2023, written by Defendant Westrop entitled

*The U.S. Charitable Network That Subsidizes Hamas, and the Donors Behind It.*  While that

same article was published on Defendant MEF's website, the link in the February Article was to

a third-party website instead of MEF.  The 2023 Article contained the *exact* same defamatory

allegations as the February Article.  Thus, in the February Article, Defendants were simply

repeating unsupported defamatory allegations and, by repeating them, giving them the

appearance of support.

59.     Dr. Ashmawey previously served as President of the Muslim Arab Youth

Association in the 1990s.  His involvement with the organization ceased in 1998 – *twenty-seven*

*years ago*.  Dr. Ashmawey has no recollection of the expression of such repugnant sentiments at

15

events during his tenure with the Muslim Arab Youth Association, denies that any such repugnant statement was made under his "watch" or was otherwise endorsed, supported or even allowed by him. He does not and has never supported the utterly repugnant notion, falsely attributed to him by implication by Defendants, that Israelis should be "exterminated" or otherwise made the victims of terrorist violence.

60.     Additionally, by referring to Human Appeal as an "*Islamist* charity," Defendants were deliberately linking Plaintiffs with militant Islamic fundamentalism, a movement which Plaintiffs have nothing to do with. The word "Islamist" conveys that the person or entity so described advocates for the establishment of governments operated under Islamic law, but as Defendants know, Human Appeal is not an "Islamist" charity because, as Defendants know, it has never advocated for the establishment of governance under Islamic law.

61.     Following the publication of the February Article, Plaintiffs, through counsel, reached out to Defendant MEF to inform it of the false allegations contained in the February Article and demand that MEF take corrective action, such as removing or correcting the article.

62.     In correspondence regarding the February Article, HAUSA pointed out that Dr. Ashmawey had not been involved with Mercy USA since 1998 – *twenty-seven years ago*, denied that any such events had occurred, and (in subsequent correspondence) pointed out that Defendants' sole support for this defamatory allegation was an anonymous source in a newspaper article from more than twenty years ago.

63.     HAUSA also objected to Defendants' false description of it as an "Islamist charity," noting that it has nothing to do with Islamism and is devoted instead to providing relief to suffering populations around the globe.

16

64.     HAUSA alerted Defendants to the fact that it is not incorporated or affiliated with the entity named Human Appeal International which is based in the United Arab Emirates. The same applies to Human Appeal Australia and Human Appeal Bangladesh.

65.     Finally, HAUSA also pointed Defendants to the above referenced investigation by the Charity Commission of England and Wales which concluded that HAUK was *not* a member of the Union of Good.

66.     Defendants ignored Plaintiffs' evidence and rebuttals to the defamatory allegations as they did not comport with Defendants' preconceived notions and false narrative. Defendants refused to remove or correct the article.

**The June Article**

67.     On June 10, 2025, MEF published an article authored by Sam Westrop entitled "*Texas State Government Gives $13 Million to Islamist Mosques and Community Groups.*"  The June Article contained the following defamatory allegations:

- In 2024, CLIC ran an <u>event</u> at its mosque, in collaboration with Human Appeal, that featured the <u>pro-Hamas</u> activist Sami Hamdi.  CLIC's partner, Human Appeal, is an international Islamist charitable franchise <u>repeatedly accused</u> of involvement with terrorist organizations and their proxies.

68.     While Defendants claimed in the June Article that Plaintiffs worked "in collaboration" with CLIC (a Texas-based Islamist organization), the purported "evidence" they offered showed nothing of the sort.  Rather, it simply shows that HAUSA was a designated charity of choice at an event organized by CLIC – *with no indication that HAUSA organized or participated in* the event.

69.     In this article, Defendants falsely identified HAUSA as an "international Islamist charitable franchise" notwithstanding that HAUSA had explained, following the February article, that it is not an Islamist organization and is not a franchise that is part of some global network.

70.     The article states that HAUSA had been "repeatedly accused of involvement with terrorist organizations and their proxies" however the only cited evidence for such accusations is Defendants' own past accusations - the only cited support for this statement is an article previously published by Defendants on June 17, 2013 entitled "Prominent British Charity 'Linked to Hamas.'"  But HAUSA has never been accused of involvement with terrorism organizations, and as Defendants know, did not come into existence until 2022.

71.     Thus, Defendants were simply repeating their prior defamatory allegations but attempting to give them more authority by alleging, based on their own publication, that Plaintiffs were "repeatedly accused" of being involved with terrorists. In light of Plaintiffs' previous correspondence regarding similar false allegations, by the time MEF published these accusations again, if it did not have doubt already, by then it surely had a reason to doubt those accusations, yet did not care whether the statements were false and took no steps to determine whether there were any facts that could support the allegations.

72.     Following publication of the June Article, Plaintiffs communicated with Defendants, explained why the statements accusing them of supporting terrorism and Hamas were false and defamatory, and demanded that Defendants remove the false and defamatory articles and issue a public correction.  Defendants refused to make any form of retraction or correction.

**The August Article**

73.     On August 26, 2025, MEF published an article authored by Sam Westrop entitled "*Terror-Aligned Charity Human Appeal Should Be Prosecuted, Not Publicly Funded -- U.K.-Headquartered Charity Finances Hamas Terror Proxies.*" When converted to a pdf, the August

18

Article is 25 pages long and is devoted to spreading inflammatory falsehoods concerning Plaintiffs.

74.     Prior to publishing the August Article, Defendants provided a series of questions to Plaintiffs and requested responses. Originally, Defendants gave Plaintiffs *one day* to respond to the questions, even though the questions were compound, referenced events which had occurred decades prior, and referred to purported "evidence" which Defendants did not provide Plaintiffs.

75.     After Plaintiffs objected to only being given one day to respond to Defendants' questions, Defendants provided Plaintiffs additional time, but still refused to provide Plaintiffs with the so-called "evidence" they were relying on so that Plaintiffs could actually consider and respond to it.  Nevertheless, Plaintiffs endeavored to respond to Defendants' questions and explained why much of Defendants' apparent pre-conceived narrative was incorrect.

76.     Defendants did not incorporate any of the information Plaintiffs provided them into the conclusions drawn by the article they eventually published (the August Article) and simply attached the letter to the August Article with the dismissive explanation that the statements in the letter were "betrayed by the weight of sourced examples."  In reality, as set forth below, the August Article is replete with half-truths, false innuendos, circulatory reporting, and ambiguous, at best, decades-old purported "evidence" which Defendants know does not support the false and defamatory allegations.

77.     Nothing published by Defendants or any of the purported "evidence" on which Plaintiffs rely supports their false and defamatory narrative that Plaintiffs are supporting or financing terrorism or terrorist organizations like Hamas and/or working to advance a militant Islamic agenda.  Defendants published these statements knowing or in reckless disregard of their

falsity as the defamatory statements are (i) unsupported by Defendants' purported evidence (or only supported by Defendants' own prior reporting); (ii) contradicted by publicly available documents; and (iii) contrary to the factual representations which Plaintiffs made to Defendants following publication of the February and June Articles which Defendants did not fairly investigate – given Defendants' pre-conceived determination to disparage Plaintiffs, regardless of the facts.

78.     The first page of the August Article directly accuses Plaintiffs of financing terrorism, a felony crime, and asks why the organization has not yet been prosecuted for this criminal activity.  Plaintiffs have never financed terrorism, nor have Plaintiffs been accused of such, and Defendants, knowing that Israel permits Plaintiffs to operate in Gaza, know that Defendants' allegations are supported by no evidence and are contrary to the conclusion of the government of Israel that HAUK is not financing Hamas or other terrorist organizations.

79.     The entire "Executive Summary" of the August Article is false and defamatory *per se*:

- Newly uncovered archived webpages indicate that Human Appeal's U.K. office worked to 'form' the U.K. contingent of the Union of Good, a terror-financing umbrella organization later designated as a terrorist organization by the U.S. government, which described it as 'an organization created by Hamas leadership to transfer funds to the terrorist organization.'

- Over the past few years, accounts filed by Human Appeal's headquarters in the U.K. report millions of dollars of financial transfers to groups in Gaza that work closely and publicly with the Hamas terrorist regime.

- Human Appeal head Mohamed Ashmawey appears to have a long history of involvement with Islamist causes, including a stint with the Kuwait-based International Islamic Charity Organization (IICO), a terror-aligned charity that previously publicly partnered with the late Hamas terror leaders Ismail Haniyeh and Yahya Sinwar.  Today, IICO describes Human Appeal as one of its partners.

- Human Appeal U.K. denies any connection to Human Appeal in the U.A.E., which intelligence agencies have accused of extensive terror-financing activities.  Human Appeal's denials persist in spite of almost identical historical logos and an archived

4899-7847-7176.v6

website hosted by Human Appeal's U.K. office, in which the U.A.E. Human Appeal is listed as a 'regional office.'

- Former top staff at Human Appeal U.K. include Moin Shubib, a prominent British Islamist activist.  An FBI document appears to allege Shubib served as a senior Hamas leader.

- Events organized by Human Appeal U.K. and Human Appeal USA have repeatedly featured extremist preachers who have expressed openly anti-Jewish, racist and pro-terror rhetoric.

- Despite the repeated allegations of extremism and terror financing directed at Human Appeal, Western governments and financial institutions have repeatedly partnered with the radical charity.

80.    In addition to the Executive Summary, the body of the August Article continues defamatory allegations regarding Plaintiffs.  The entirety of the August Article is devoted to Defendants' preconceived narrative that Plaintiffs are supporters and financiers of radical Islam, terrorism, and terrorist organizations like Hamas and its proxies.

81.    In order to falsely allege that Plaintiffs support radical Islam, Islamism, and terrorism, Defendants engage in a multi-prong attack.  The false and defamatory allegations regarding Plaintiffs in the August Article can be divided into three groups:

    i.    Statements which directly accuse Plaintiffs of financing and supporting terrorism and militant Islamists;

    ii.    Statements which indirectly accuse Plaintiffs of financing and supporting terrorism by falsely linking Plaintiffs to other organizations or persons which are suspected of supporting terrorism; and

    iii.    Statements which indirectly accuse Plaintiffs of financing and supporting terrorism by falsely accusing individuals and other organizations which Plaintiffs work with of terrorism.

82.    Individually and collectively, these false allegations are intended to support Defendants' false narrative that Plaintiffs, working alone and together with other organizations, currently provide support to terrorist organizations, and advocate Islamist extremism and terrorism.

21

*Defendants Falsely Allege that Plaintiffs Support Terrorism and Militant Islamists*

83.    Defendants falsely allege that Plaintiffs support radical Islamic groups and terrorists by providing them with financial support and a platform to espouse their radical ideologies.

84.    Specifically, in addition to the statements from the Executive Summary listed above, the following statements made in the August Article are individually false and defamatory in that they accuse Plaintiffs (and former staff members of HAUK) of supporting terrorists:

- Human Appeal, a prominent and wealthy Western Islamist organization with offices across the globe, has handed millions of dollars to proxies and supporters of the designated terrorist organization Hamas.

- On July 10, an Israeli airstrike reportedly killed three Human Appeal staff in Gaza. While Israeli authorities have not stated the reason for the strike, at least one of the Human Appeal staff members killed appeared supportive of Hamas terror, seemingly welcoming the October 7 attacks on social media.

- Human Appeal staff member Bilal Shehaden, killed in an Israeli strike in June 2025, welcomed Hamas's October 7 attacks.

- That same year [2021], however, Human Appeal was already funding the Hamas proxies in Gaza identified above.

- As noted in multiple British media reports, the U.K. headquarters of Human Appeal has repeatedly given platforms to extremist speakers.

- In 2011, the *Telegraph* reports, Human Appeal organized events with Raed Saleh, a Hamas supporter who refers to Jews as 'bacteria' and 'monkeys.'  The event was jointly organized with the Palestinian Forum in Britain, whose head, Zaher Birawi, has been described in Parliament as a 'senior Hamas operative.'

- The same year, Human Appeal sponsored an event which featured Haitham al-Haddad as a guest speaker.  Al-Haddad has declared Jews to be 'enemies of god, and the descendants of apes and pigs.'  In another sermon, Haddad states that 'the goal of jihad is, primarily, to ensure that Sharia governs the entire earth,' and insists it 'is obligatory for Muslims to rule the entire earth by the law of Allah, even if that leads to fighting the People of the Books [Jews and Christians].'

- The same Human Appeal event also featured Zahir Mahmood, a prominent radical cleric and defender of Hamas.

- [E]xtremists such as Zahir Mahmood <u>continue</u> to speak at Human Appeal events in the U.K., sharing the platform with Ashmawey himself.

- In the United States, meanwhile, Human Appeal USA (whose website also <u>lists</u> Ashmawey as CEO) regularly hosts extremist preachers.  In just the past few months, Human Appeal events in America have featured extremists such as Ammar Shahin, Siraj Wahhaj, and Waleed Basyouni.

- Wahhaj, meanwhile, has <u>called</u> on American Muslims to carry out acts of jihad and to send weapons to Muslims around the world.  He has advocated stoning adulterers and cutting off the hands of thieves.  He advises his congregants: 'Take not into your intimacy those outside of your race.  They will not fail to corrupt you.' Wahhaj has also <u>spoken</u> at Human Appeal events in the United Kingdom.

- In 2024, USAID <u>disclosed</u> 'collaboration' with Human Appeal in Sudan, despite previous concerns about the charity's terror ties expressed by the FBI and CIA, and <u>discussed</u> in Congress.

- In documents filed with the U.K. Charity Commission over the past four years, Human Appeal U.K.'s accounts reveal direct relationships and funding arrangements with major Hamas proxies in Gaza, an investigation by the Middle East Forum now reveals.

- The rest of Human Appeal's accounts note associations with other antisemitic and pro-Hamas organizations.

- Human Appeal's Gaza partners hate Jews.

85.    The above defamatory statements are false and defamatory *per se* as they accuse Plaintiffs of engaging in illegal conduct.

86.    Plaintiffs do not and never have funded Hamas, Hamas proxies, or any entity or person involved in terrorism or terrorist activities.

87.    Plaintiffs are unaware of any staff members who support or supported Hamas, or any entity or person involved in terrorism or terrorist activities.

88.    By alleging that one of the Human Appeal staff members who was tragically killed in an Israeli military strike "appeared supportive of Hamas terror," Defendants seek to justify the tragic loss of a civilian who was engaged in humanitarian work in Gaza and imply that

Human Appeal's employees (and thus Human Appeal) supported the October 2023 terrorist attacks, which is false.

89.     Defendants' defamatory claim that Human Appeal has "repeatedly given platforms to extremist speakers" is contradicted by its own reporting.  Specifically, as alleged in the August Article, Defendants only point to two events from 2011 where Human Appeal allegedly hosted events which featured extremist speakers.

90.     There is no allegation in the August Article that any extremist views were expressed at the events organized by Plaintiffs and Plaintiffs are not aware of any events organized by HAUK or HAUSA where extremist views have been expressed.  Yet, by including quotes of hate language immediately after descriptions of events hosted by Plaintiffs, Defendants seek to create the impression in the mind of a reasonable reader that such opinions were expressed at events hosted and/or organized by Plaintiffs and that Plaintiffs support such views.

91.     Additionally, for some of their claims that Plaintiffs have given extremist speakers a platform, Defendants cite only MEF's own prior reporting.  Repeating defamatory allegations in reliance on only their own reporting comports with the *modus operandi* outlined in the George Mason Report.

92.     By alleging that Plaintiffs' "partners hate Jews," Defendants imply that Plaintiffs also hate Jews and are antisemitic.  This is categorically false and Defendants provide no support linking Plaintiffs to any such comments or views.

93.     Defendants also falsely claim that Plaintiffs' CEO, Dr. Ashmawey, is a supporter of terrorism, and thus also falsely imply that Plaintiffs (having hired Dr. Ashmawey despite all of his purported ties to terrorism) also support terrorism and terrorist organizations like Hamas.

94.     Specifically, the below statements are false and defamatory:

24

- In 2015, during Ashmawey's tenure, Islamic Relief U.K. funded and worked with the Al-Falah Benevolent Society.  At the time, Al-Falah was run by 'well-known Hamas figure' Ramadan Tamboura and Jamal Hamdi Al-Addad, who managed a Hamas-run Hebrew language program for Palestinians in Gaza titled 'Know Your Enemy.'

- While Ashmawey held the position of president, [Muslim Arab Youth Association] organized a conference in 1995 with Hamas terror leader Sheikh Muhammad Siyam, who, according to the *New York Times*, told the conference: 'Finish off the Israelis.  Kill them all. Exterminate them.  No peace ever.'

- In 1998, Ashmawey reportedly welcomed Hamas financier Wagdy Abd el-Hamied Mohamed Ghoneim into his home, after the infamous hate preacher was denied entry to Canada (the *Times* reports the denial was because of 'his support for suicide bombings').

- Ashmawey also served on the board of Mercy International.  The Investigative Project on Terrorism reports that 'Mercy International originally went by the name Human Concern International (HCI), an organization created in the 1980s to support the Afghan jihad against the Soviets.  Their Pakistan offices were headed by Ahmed Khadr, a close associate of bin Laden and an al Qaeda moneyman.

- Amazingly, despite Ashmawey's long history of connections to extremists, the Human Appeal board still seems to have considered him a sanitized alternative to its previous chief executive, who was reportedly fired from the organization following government scrutiny over Human Appeal's activities in Syria.

- Human Appeal left out one of Ashmawey's previous jobs.  Ashmawey's LinkedIn page discloses his job, from October 2016 to March 2018, as a 'senior management consultant' at the International Islamic Charity Organization (IICO) in Kuwait.  The IICO is a terror-tied Islamist charity.  In 2012, IICO organized a ceremony honoring Hamas leaders, including the late Ismail Haniyeh as well as Yahya Sinwar, organizer of the October 7 terror attacks.

- The IICO, for which Mohamed Ashmawey later worked, hosted the late Hamas terrorist leaders Ismail Haniyeh (third from right) and Yahya Sinwar (far-right).

- Couter-terrorism analysts have listed the IICO as an inaugural member of the Union of Good, an international fundraising network set up by Hamas. … Multiple senior officials of various branches of the Muslim Brotherhood, a global Islamist movement whose offshoots include Hamas, have long served in senior positions on IICO's board, according to the *Global Muslim Brotherhood Daily Watch*.

- Terror charity IICO refers to Human Appeal as a 'partner.'

4899-7847-7176.v6

- While serving at Islamic Relief, just months after IICO's embrace of Hamas, Ashmawey 'signed a cooperation protocol' with IICO on behalf of Islamic Relief.

95.     Dr. Ashmawey has enjoyed a long career working with NGOs and is a widely respected and recognized humanitarian.  The above statements rely on anonymous reports of events which occurred decades ago to falsely allege that Dr. Ashmawey has supported and continues to support terrorism.

96.     In addition, some of the events and connections referenced in the article (identified above) have nothing to do with Dr. Ashmawey. For example, the article states that, in 2012, IICO organized a ceremony honoring Hamas leaders, including an organizer of the October 7 terror attacks, however this was four years before Dr. Ashmawey worked for IICO, did not in any way involve HAUK and HAUSA, and thus has nothing to do with Plaintiffs.  Yet Defendants include this content to imply that Plaintiffs indirectly support Hamas.

97.     Contrary to Defendants' allegations, IICO is a well-respected international charity organization.  It is a non-profit organization of the Kuwaiti royal family and was created by a governmental royal decree in Kuwait.

98.     The United Nations Relief and Works Agency for Palestine Refugees in the Near East describes a 2020 partnership with IICO to provide "primary healthcare to Palestine refugees in Gaza."

99.     A 2018 publication by the UN Refugee Agency entitled "Partners in Brief," describes IICO as "one of the largest humanitarian organizations in the Muslim world.  It is an independent, multi-faceted charity that provides its humanitarian services to those in need in the

world without discrimination or intolerance away from interference in politics or ethnic conflicts."[11]

100.    In addition, Islamic Relief, the Muslim Arab Youth Association, and Mercy International are not terrorist organizations nor sponsors of terrorism, and they have not been identified as such by the governments of the United Kingdom or the United States.

101.    Prior to hiring Dr. Ashmawey as CEO, HAUK conducted extensive due diligence which did not reveal any basis for concern.  Dr. Ashmawey is very well respected for his decades of humanitarian charity work and has been recognized for his humanitarian work.

102.    Finally, Defendants also accuse Plaintiffs of having inadequate oversight and due diligence to further infer that Plaintiffs support terrorism.  Specifically, the following statements are false and defamatory:

- The U.K. Charity Commission found "Human Appeal failed 'to report so serious an issue to the Commission' for 'almost two months,' in an apparent violation of the statutory responsibility to do so under the U.K.'s Terrorism Act of 2000.

- The Commission also noted concerns about the lack of 'due diligence' by Human Appeal over its relationships with a donor in the United Arab Emirates, unreported payments in Turkey, as well as the transport of large amounts of cash bills through Greece.

103.    The Charity Commission referred to by Defendants stemmed from HAUK *self-reporting* to the Charity Commission that several aid trucks and a warehouse were taken by armed militias in Syria.  The inquiry concluded with no penalties or sanctions against HAUK and the Commission saluting HAUK's cooperation and enhancing of its governance.

---

[11] Available at: https://www.unhcr.org/us/media/2018-unhcr-annual-consultations-ngos-partners-briefief | UNHCR US

104.    Defendants' false and defamatory reporting twists the UK Charity Commission's inquiry to imply that the Charity Commission found that HAUK engaged in misconduct in violation of the UK Terrorism Act, even though, as Defendants know, no such finding occurred.

*Defendants Falsely Allege that Plaintiffs are Linked to Suspected Terrorist Organizations*

105.    In addition to falsely claiming that Plaintiffs directly support terrorists and their proxies, Defendants also falsely claim that Plaintiffs are aligned with other organizations which are suspected of supporting terrorists.

106.    Specifically, the following statements in the August Article are also individually false and defamatory:

- In 2008, the Israeli Government reportedly proscribed Human Appeal groups in the UAE, Britain, and Australia as among the 'bodies that are active abroad and which are responsible for raising very large sums for Hamas activities in Judea, Samaria and the Gaza Strip.'

- [I]t is conceivable that Human Appeal UAE and various branches have completely separated from the London headquarters. But even if this position is accurate, it does little to address concerns about Human Appeal U.K.'s continued involvement with Hamas proxies in the Gaza Strip and extremists in the West, as outlined in this report.

- New evidence has also emerged of Human Appeal's historical involvement with the Union of Good, a terror financing organization established by Hamas.

- A Middle East Forum review of archived Human Appeal websites found that the U.K. Human Appeal office once explicitly noted its involvement with the Union of Good.

107.    Prior to publication of the August Article, Plaintiffs informed Defendants multiple times that they are separate from Human Appeal International UAE and have no affiliation with that entity. Defendants refused to accept this as it does not fit their preconceived narrative.

108.    In attempting to counter Plaintiffs' representations that they are separate organizations from any entity in the UAE or Australia with the name "Human Appeal," Defendants point to an archived website from *2013* and HAUK's 2017 annual report which

disclosed a grant payment to Human Appeal Australia as supposed "proof" that Human Appeal Australia is a "regional branch" of Plaintiffs. Like any non-profit, HAUK makes humanitarian related grants to various independent registered global charities - making a charity grant does not prove that HAUK affiliated with the grant recipient, as Defendants know.

109.    Defendants cite to an archived website from 2008 in alleged support of their claim that HAUK was previously proscribed by the Israeli government for suspected links to Hamas. However, while in 2008, Israel did ban multiple international Muslim affiliated charities, Defendants are aware that HAUK and HAUSA are not proscribed from providing relief within Israel, which Defendants know to mean that Israel does not classify HAUK or HAUSA as in any way providing support to Hamas or other terrorist organizations.

110.    HAUK continues to publicly operate humanitarian aid projects in Gaza and is permitted by the Israeli government to do so. If Israel believed that HAUK was supporting Hamas or terrorist activities, it would not be allowed to conduct humanitarian projects in Gaza.

111.    The fact that Defendants rely on an outdated archived website from 2008 reveals that Defendants' statements are a function of Defendants' pre-conceived bias and lack of genuine interest in whether or not their accusations against Plaintiffs are true or false.

112.    Defendants' publication claims that there is "evidence" and "archived" websites supporting their false and defamatory allegations that Plaintiff previously supported the Union of Good and the 101 Days Campaign. However, a review of the purported "evidence" reveals that it does not prove anything.

113.    For example, while an unclear archived webpage *from more than twenty years ago* appears to show a reference to the Union of Good and the 101 Days Campaign and a statement that "British charities come together to form the Union of Good," there is absolutely

no indication of the purpose for the references and it does not indicate that Plaintiffs actually supported the Union of Good or the 101 Days Campaign. However, from the mere fact that the Plaintiffs' website more than twenty years ago may have referenced the Union of Good and 101 Days Campaign, Defendants allege that Plaintiffs *are currently supporting terrorism.* This is false and defamatory.

114.    Defendants also falsely link Plaintiffs to Interpal. While Plaintiffs *previously* worked with Interpal on an ad hoc basis, they no longer do so, and Defendants thus rely on allegations regarding events which occurred more than twenty years ago and half-truths to falsely allege that Plaintiffs *currently* support terrorism.

115.    Specifically, the August Article falsely alleges that:

- Just before Interpal was designated as a terrorist group in 2003, Human Appeal U.K. quite happily listed this Hamas front Interpal as an organization it 'had the honor of working with.' After Interpal was designated, Human Appeal and Interpal officials seemingly continued to appear together at public charity events, according to British media.

- In 2005, according to the *Independent*, Israeli prosecutors accused 'British charities Human Appeal International and Interpal' of diverting money raised to 'help the Palestinian poor … to fund terror and support the families of suicide bombers.'[12]

- Hamas appears to have appreciated Interpal and Human Appeal's efforts in the past. In 2011, as noted by the *Daily Telegraph*, Human Appeal's logo was apparently one of a number of Western Islamist charity logos featured at a Hamas ceremony in Gaza organized by Hamas Social Affairs Minister and Shura Council member Ahmed Al-Kurd, whom the U.S. Treasury designated as a terrorist in 2007.

116.    While Defendants acknowledge that HAUK only listed Interpal as a partnership organization *prior* to Interpal being designated as a terrorist group, they undermine this

---

[12] The Article clarified that "Human Appeal International is the former name of Human Appeal U.K."

acknowledgment and seek to contradict it by claiming that HAUK "continued to appear" with Interpal at public events.

117.    The news article Defendants rely on for their claim that HAUK continued to associate with Interpal after it was designated a terrorist group notes that the event was attended by "the borough's mayor, Coun David Foster," as well as "special guests such as Professional Footballers' Association chief executive Gordon Taylor," and there were "musicians from Witton Park High School, Blackburn" who provided entertainment.[13]

118.    Thus, while the August Article attempts to make Human Appeal's appearance at a public event with Interpal into something nefarious, the underlying article suggests that the charitable event was a mainstream event which included elected officials and public figures.

119.    As to the more recent events and alleged connections between HAUK, Defendants rely on half-truths and a distortion of the record to suggest that HAUK is promoting terrorism.  That is, the article which Defendants cite for support that Human Appeal and Interpal "diverted" funds to terrorist, suggests that Human Appeal and Interpal were in fact the *victims* of that scheme and explicitly says that the funds were "unwittingly diverted" by a Hamas activist.[14]

120.    Additionally, the UK High Court has on several occasions (including against the Express newspaper in 2010) found that it is defamatory and libelous to assert that Interpal supported Hamas or any other terrorist activities, and the Charity Commission found no evidence to prove alleged links between Interpal and terrorism on three occasions. As a consequence, and following detailed investigation, Interpal continues to operate lawfully as a UK Charity.

---

[13] https://www.lancashiretelegraph.co.uk/news/5814736.easing-pain-war/

[14] https://www.independent.co.uk/news/world/middle-east/charity-cash-for-palestinian-poor-was-siphoned-to-suicide-bombers-517209.html

121.    Similarly, while Defendants allege that Plaintiffs' logo was displayed at a Hamas event, there is absolutely nothing suggesting that Plaintiffs were aware of or approved the use of their logo at this event.

122.    Similar allegations that HAUK had links to terrorist activity which were made by the Jewish Chronicle newspaper in February 2012 resulted in the Jewish Chronicle paying HAUK substantial damages and legal costs and publishing an unreserved public apology, which stated in no uncertain terms that these allegations are untrue. The apology remains available online.

*Defendants Falsely Claim that Individuals and Entities with Whom Plaintiffs Work are Supporters of Terrorism and Anti-Semitic*

123.    Finally, Defendants defame Plaintiffs by falsely alleging that organizations with which Plaintiffs work support terrorists.  By falsely claiming that these other organizations support terrorism and then (accurately) reporting that Plaintiffs work with these organizations, Defendants create the false and defamatory impression and implication that Plaintiffs are working with multiple organizations that support terrorism and thus indirectly support it themselves.

124.    The first organization which Defendants falsely claim is linked to terrorism is the Gaza Zakat Committee or Islamic Zakat Society.  Specifically, the following statements made in the August Article are also individually false and defamatory:

- Since 2020, Human Appeal has handed 4.7 million GBP ($6 million USD) to the Islamic Zakat Society (IZS).  Also known as the Gaza Zakat Committee, IZS is a leading charitable partner of Hamas.

- Multiple branches of Human Appeal work with the Gaza-based Islamic Zakat Society, which is closely aligned with designated terrorist organization Hamas.

- Human Appeal U.K. has given another 3 million GBP ($3.8 million USD) since 2020 to the Al-Zakat Committee of Jerusalem (sometimes spelled 'Al Zakah Committee of Jerusalem').  In late 2023, Israeli authorities reportedly banned the

32

> committee as a Hamas front, following review of an indictment filed a year
> earlier, which charged, <u>according</u> to Palestinian media, that 'the association was
> founded by Hamas activists and distributed a large portion of its funds to families
> in need, including the families of Hamas activists and the families of martyrs.'

125.    As correctly reported by Human Appeal, it has given money to the Islamic Zakat Society and the Al-Zakat Committee of Jerusalem.  However, any allegation that these organizations support Hamas and terrorism is demonstrably false.  Thus, by (correctly) reporting that Plaintiffs have given money to IZS and the Al-Zakat Committee of Jerusalem and then (falsely) claiming that these are terrorist organizations, Defendants have intentionally and knowingly furthered their false narrative that Plaintiffs support terrorism.

126.    Many Muslim charitable organizations have the word "Zakat" in their name as this simply refers to one of the pillars of Islam which requires that Muslims with sufficient wealth donate a portion of their assets to help the poor.

127.    Defendants cite no support for their claims that IZS is "closely aligned" with a terrorist organization.  While Defendants include a hyperlink to an article from alquds.com for support of their claim that the Al-Zakat Committee of Jerusalem was a Hamas front, the article that they linked to discusses the "Central Jerusalem Zakat Association" and the "Jerusalem Zakat Committee."[15]  Defendants offer no explanation as to why they portray the "Central Jerusalem Zakat Association" or the "Jerusalem Zakat Committee" as the same entity as the separate Al-Zakat Committee of Jerusalem.

128.    Prior to engaging in any partnerships or providing funds to any third-party organization, Plaintiffs conduct rigorous background checks and screening.  On the basis of those screenings, Plaintiffs concluded that both IZS and the Al-Zakat Committee of Jerusalem are legitimate, reputable organizations.

---

[15] *See* https://www.alquds.com/en/posts/103201

33

129.     Another organization which Defendants falsely claim is linked to terrorism is the Bayader Association for Environment and Development ("Bayader").  Specifically, the August Article contains the following false and defamatory statement:

- Human Appeal also provided $833,000 to the Bayader Association for Environment and Development, a charity involved with senior Hamas officials, including the son of the late Hamas leader Ismail Haniyeh.

130.     While Plaintiffs do provide financial support to Bayader, the above-statement is false and defamatory because it falsely accuses Bayader of being linked with Hamas, and thus falsely implies that Plaintiffs are supporting Hamas by providing financial support to Bayader.

131.     In actuality, Bayader is a reputable NGO which works in the Gaza Strip and West Bank – with the permission of the government of Israel.  It receives funding from various agencies, including the European Commission and the World Bank.  Defendants know these facts, and know that as a result, there is no support for their fabricated claim that Bayader is linked with Hamas.

132.     Prior to providing any funding to Bayader, Plaintiffs conducted due diligence and did not see any red flags suggesting that it is linked to Hamas, or any other terrorist groups.

133.     Another organization which Defendants falsely claim is linked to terrorism is the Unlimited Friends Association ("UFA"). Specifically, the August Article contains the following false and defamatory statements:

- In previous years, Human Appeal also partnered with the Unlimited Friends Association (UFA), another Gaza-based charity with connections to the Hamas terror regime.  UFA is involved with senior Hamas leaders and promotes violently antisemitic rhetoric across its social media pages.  The charity hosts events to provide financial support to 'the families of martyrs and prisoners.'

- Despite existing media reports about UFA's terror ties, Human Appeal not only embarked on a close relationship but unashamedly reports its 'partnership' with UFA on its own website.

134.     While Plaintiffs do work with UFA, the above-statements are false and defamatory because they falsely accuse UFA of being linked to the "Hamas terror regime" and thus falsely allege that Plaintiffs also support the "Hamas terror regime" by working with UFA.

135.     Additionally, Defendants rely on their own article from 2017 in support of their claim that UFA is involved with Hamas and promotes violent rhetoric.

136.     In actuality, UFA is a reputable NGO that received funding from the United States Agency for International Development (USAID).

137.     Prior to providing any funding to UFA, Plaintiffs conducted due diligence which did not in any way suggest that it is linked to Hamas or to any other terrorist groups.

138.     Defendants also defame Plaintiffs by alleging that the Islamic University of Gaza (which Plaintiffs support) is a "major Hamas-linked institution," specifically Defendants falsely allege that:

- Human Appeal has also been a <u>steadfast supporter</u> of the Islamic University of Gaza, a major Hamas-linked institution in the Palestinian territory.

139.     Defendants cite no support for their claim that the Islamic University of Gaza "IUG" is a "major Hamas-linked institution."  Prior to 2023, the IUG was considered to be the top-ranked university in Gaza.  It received monetary support from donors such as the British Council, the World Bank, and USAID.

**Defendants Promote the August Article on Social Media with Additional Defamatory Statements**

140.     On August 26, 2025, Westrop posted a link to the August Article on X and included the defamatory statement that a "Human Appeal website from 2001 contain a dedicated Union of Good page?"  A copy of Westrop's X post is attached as Exhibit E.

141.     The above statement is defamatory and false as the Union of Good is an organization, some of whose members have allegedly provided funding to organizations that

have committed acts of terrorism.  That statement is false: the Human Appeal website has never

had a dedicated Union of Good page, and by suggesting otherwise, Westrop furthered his

defamatory narrative that Plaintiffs support terrorism.

142.    Westrop knew the above statement was defamatory at the time he published it

because the archived website contained in the August Article did not show a "dedicated" page to

Union of Good but rather, at most, contained an ambiguous mention of the Union of Good.

143.    That same day, on August 26, 2025, MEF also published a link to the August

Article on X and included the defamatory statement that "[f]rom the Union of Good to extremist

fund transfers, @HumanAppeal's ties to terror are not accidental."  A copy of MEF's X post is

attached as Exhibit F.

144.    The above statement is defamatory *per se* as it directly accuses Plaintiffs of

intentionally supporting terrorism.

145.    The above statement is false as Plaintiffs have no ties to terrorism.  MEF knew or

recklessly disregarded that the above statement on its X page was false as they have uncovered

no direct ties between Plaintiffs and terrorists since no such ties exist.

146.    Finally, on August 26, 2025, MEF also promoted the August Article on its

Facebook page and included the defamatory allegation that "Sam Westrop documents how

Human Appeal's UK office helped form the Union of Good and funded named terror partners in

Gaza."  A copy of MEF's Facebook post is attached as Exhibit G.

147.    The above statement is defamatory *per se* as it falsely accuses Plaintiffs of

forming a suspected terrorist supporter and funding terrorism.

148.    The above statement is false as Plaintiffs did not help form the Union of Good

and have never funded terrorists.  MEF knew or recklessly disregarded that the above statement

was false. Indeed, even Defendants' own August Article does not "document" that Plaintiffs "helped form" the Union of Good but merely includes a purported archived website page with an ambiguous reference to the Union of Good and does not show any direct support or funding from Plaintiffs to "named terror partners."

149.    Plaintiffs have never funded terrorists or organizations supporting terrorism.

**The October Article**

150.    Defendants have continued in their malicious misinformation campaign against Plaintiffs following the publication of the August Article.

151.    On October 3, 2025, MEF published an article authored by Jules Gomes entitled "*U.K. Lawmaker Calls Out Islamist Links in Pan-European Youth Forum*."

152.    The October Article contained the following defamatory allegation:

- Former FEMYSO president Abdelrehman Rizk has links with <u>Human Appeal</u>, an Islamic charity accused of having ties to Hamas.

153.    As set forth above, HAUK and HAUSA are not Islamic charities, have no ties or connections to Hamas, and are not affiliated with any entity with ties to Hamas. Defendants' defamatory statement in this article is part of their deliberate misinformation campaign against Plaintiffs.

<u>**Plaintiffs Have Suffered Severe Damages**</u>

154.    Prior to Defendants' malicious misinformation campaign, Plaintiffs enjoyed well-earned positive reputations in the humanitarian and philanthropic communities.

155.    The false allegations in the Articles have damaged Plaintiffs' reputations and caused them significant harm.

156.    In order to carry out their charitable goals, Plaintiffs routinely work with other organizations and individuals.  Just as Plaintiffs carefully screen any partner organizations, the

37

organizations Plaintiffs seek to work with conduct their own due diligence on Plaintiffs.  The

defamatory Articles published by Defendants can raise flags during background screenings and

thus risk Plaintiffs being rejected as a suitable organization by partner organizations.

157.    The Articles have hampered HAUK and HAUSA's ability to raise funds and have

jeopardized their regulatory approval and their ability to form partnerships with other NGOs and

governmental entities.

## FIRST CAUSE OF ACTION

**DEFAMATION**
**By All Plaintiffs Against All Defendants**
**Based on the February, June, and August Articles**

158.    Plaintiffs repeat and reallege paragraphs 1 - 157 above.

159.    MEF published, and Westrop wrote, the false and defamatory Articles about

Plaintiffs with a knowing and reckless disregard for the truth and thereby caused and continue to

cause Plaintiff damages.

160.    The Articles and statements made therein are false and defamatory *per se* because

they accuse Plaintiffs of committing a serious crime, specifically supporting terrorism.

161.    MEF and Westrop published the defamatory statements in the Articles knowing

that they are false, with reckless disregard for the truth of the statements, and in a fashion that

was grossly irresponsible.

162.    Plaintiffs HAUK and HAUSA have been severely damaged by Defendants'

actions alleged above which have had destructive effects on their reputations, jeopardized their

regulatory standing, their ability to work with other partner organizations, and their ability to

raise funds, thereby entitling Plaintiffs HAUK and HAUSA to an award of monetary damages.

163.    Plaintiff Ashmawey has been severely damaged by Defendants' actions alleged

above which have had destructive effects on his personal and professional reputation, his

38

emotional and psychological well-being, and his relationships in the philanthropic humanitarian community, thereby entitling Plaintiff Ashmawey to an award of monetary damages.

## SECOND CAUSE OF ACTION

### DEFAMATION
### By HAUK and HAUSA Against Westrop Based on the X Post

164.    Plaintiffs repeat and reallege paragraphs 1- 163 above.

165.    Westrop published the false and defamatory X post on August 26, 2025 about HAUK and HAUSA with a knowing and reckless disregard for the truth and thereby caused and continues to cause HAUK and HAUSA damages.

166.    The defamatory statements contained in the X post are false and defamatory *per se* because they accuse HAUK and HAUSA of having ties to the Union of Good, a suspected terrorist fundraiser.

167.    Westrop published the defamatory statements in the X post knowing that they are false, with reckless disregard for the truth of the statements, and in a fashion that was grossly irresponsible.

168.    Plaintiffs HAUK and HAUSA have been severely damaged by Defendants' actions alleged above which have had destructive effects on their reputations, jeopardized their regulatory standing, their ability to work with other partner organizations, and their ability to raise funds, thereby entitling Plaintiffs HAUK and HAUSA to an award of monetary damages.

## THIRD CAUSE OF ACTION

### DEFAMATION
### By HAUK and HAUSA Against MEF

### Based on the August 26 X Post and Facebook Post, and the October Article

169.    Plaintiffs repeat and reallege paragraphs 1 - 168 above.

170.    MEF published the false and defamatory X post, Facebook post, and October Article about HAUK and HAUSA with a knowing and reckless disregard for the truth and thereby caused and continues to cause HAUK and HAUSA damages.

171.    The defamatory statements contained in the X post, Facebook post, October Articles are false and defamatory *per se* because they accuse HAUK and HAUSA of having ties to and helping to form terrorist organizations.

172.    MEF published the defamatory statements in the X post, Facebook post, and October Article knowing that they are false, with reckless disregard for the truth of the statements, and in a fashion that was grossly irresponsible.

173.    Plaintiffs HAUK and HAUSA have been severely damaged by Defendants' actions alleged above which have had destructive effects on their reputations, jeopardized their regulatory standing, their ability to work with other partner organizations, and their ability to raise funds, thereby entitling Plaintiffs HAUK and HAUSA to an award of monetary damages.

WHEREFORE, Plaintiffs Human Appeal United Kingdom, Human Appeal United States, and Mohamed Ashmawey demand judgment against Defendants Middle East Forum and Sam Westrop:

(a) for compensatory damages, in an amount to be determined at trial, together with interest and the costs and disbursements of this action, plus reasonable attorneys' fees;

(b) for punitive damages, to be determined at trial; and

(c) for such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: December 23, 2025

SAXTON & STUMP

By: */s/ Mark E. Cedrone*
    Mark E. Cedrone, Esquire
    PA Attorney I.D. No. 45549
    Aubrey C. Emrich, Esquire
    PA Attorney I.D. No. 308645
    123 S. Broad St., Suite 2800
    Philadelphia, PA 19109
    (215) 925-2500

CARTER LEDYARD & MILBURN LLP

    Alan S. Lewis, Esq. (*pro hac vice motion forthcoming*)
    Matthew D. Dunn, Esq. (*pro hac vice motion forthcoming*)
    Madelyn K. White, Esq. (*pro hac vice motion forthcoming*)
    28 Liberty St., 41st Fl.
    New York, NY 10005
    (212) 732-3200

    *Attorneys for Plaintiffs*

4899-7847-7176.v6